Merrimack
No. 81-444

JOHN HOBSON & a.

v.

HILLTOP PLACE COMMUNITY ASSOCIATION

December 10, 1982

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*W. John Funk* on the brief and orally), for the plaintiffs.

*McSwiney, Jones & Semple*, of New London (*F. Graham McSwiney* on the brief and orally), for the defendant.

BOIS, J.   This is an interlocutory transfer without ruling from the Superior Court (*Johnson*, J.). The plaintiffs, owners of condominium units in the Hilltop Place Condominiums project, challenge the manner in which the defendant homeowners' association has assessed them for certain expenses relating to the maintenance of the "common areas" of the condominiums. We hold that the defendant's method of assessment is lawful.

The instant dispute arises from a rather complex factual context. Hilltop Place is a one-hundred-forty-seven-unit residential condominiums complex, consisting of six individual condominium structures, known as "clusters," each of which is situated on its own separate parcel of land. Each condominium cluster was created in accordance with RSA chapter 479-A, the "Unit Ownership of Real Property" statute, and each cluster has its own declaration, by-laws, and cluster owners' association. Each cluster is thus responsible for managing its own affairs and for maintaining all common areas within its confines. The common expenses of each cluster are apportioned according to the percentage interests of each owner.

The defendant, Hilltop Place Community Association (HPCA), is distinct from the individual cluster owners' associations. The defendant is a non-profit corporation which was established under RSA chapter 292 to promote the recreational and cultural interests and the health, safety and social welfare of all one hundred forty-seven unit owners. As such, it owns and manages "community property" consisting of roads which connect the clusters, a recreational building, and lands interspersed between the clusters. All unit owners are required to become members of HPCA, which is operated, pursuant to a declaration, by a board of directors elected by the members. The HPCA declaration states that HPCA expenses are to be assessed equally against each owner.

Because of its corporate status, HPCA, unlike the cluster owners' associations, is not subject to the condominium ownership statute, RSA chapter 479-A. In short, HPCA is a corporate entity which owns and manages the "community property," obtaining funding through equal assessments against its members. On the other hand, the cluster associations are condominium entities which manage their respective "common areas," obtaining the requisite funds through proportional assessments levied on the unit owners.

In order to establish reasonable uniformity in the maintenance and management of the Hilltop Place project, each cluster has delegated its "common area" managerial functions to HPCA. As a result, HPCA now has two functions: to manage its own "community property" and to administer the "common area" of each cluster.

By vote of its directors, HPCA has established a standard formula for allocating HPCA managerial expenses. Approximately fifteen to twenty percent of the expenditures goes to management of "community property." These expenses are assessed equally upon each of the one hundred forty-seven units, as required under HPCA's declaration. The remaining eighty to eighty-five percent of HPCA's managerial expenditures is allocated towards the management of the cluster "common areas." Each cluster must pay its share of this amount on a monthly basis. To obtain these funds, each cluster, in accordance with RSA 479-A:9, requires its unit owners to contribute sums which are proportionate to their ownership interests.

The particular HPCA practices which have given rise to this controversy are as follows. At various times, HPCA's assessments have yielded insufficient funds to meet its managerial expenses. In such situations, HPCA has paid for these expenses from surplus working capital which it raises through equal assessments against its members. Thus, some of HPCA's surplus working capital has been used on occasion to maintain the clusters' "common areas." The cluster owners' associations have reimbursed HPCA for these advances when making their monthly installment payments.

In addition to assessing its members for surplus working capital, HPCA has required its members to contribute equally towards the purchase of various maintenance equipment. While HPCA originally employed an outside contractor to carry out its grounds maintenance duties, it decided to terminate this practice in September 1977 and to perform the work itself thereafter. HPCA subsequently purchased grounds maintenance equipment costing approximately $32,000, paid for in equal amounts by its members.

The plaintiffs, who are all owners of units in cluster three, claim that the manner in which HPCA assessed the equipment and

surplus working capital expenses violated RSA chapter 479-A and the general scheme of organization of Hilltop Place.

Because the plaintiffs base their argument largely upon RSA chapter 479-A, a brief discussion of the relevant provisions will be helpful. RSA 479-A:5 states that the percentage of an individual's ownership interest in a condominium is computed by comparing the value of his unit with the value of the condominium as a whole. Under the statute, each unit owner shall be entitled to an undivided interest in the "common areas" of the condominium according to his ownership percentage. *Id.* RSA 479-A:1, VI defines "common areas" to include "all other parts of the property" which, pursuant to RSA 479-A:1, XIII, encompasses "articles of personal property intended for use in connection with . . . [the total condominium property]."

We have already noted that RSA 479-A:9 requires that "common expenses" shall be allocated according to each owner's undivided interest percentage. RSA 479-A:1, VII defines "common expenses" to include "all sums lawfully assessed against the unit owners by the association of unit owners" and "all expenses of administration, maintenance, repair or replacement of the common areas. . . ."

With these statutory provisions in mind, we first address the plaintiffs' argument that the assessments relating to the purchase of the grounds maintenance equipment were unlawful. The plaintiffs claim, pursuant to RSA 479-A:5, that the equipment should be owned *proportionally* rather than *equally* by all the unit owners because it is part of the "common areas" as defined by RSA 479-A:1, VI, XIII. Likewise, the plaintiffs claim that the purchase of the equipment was a "common expense" under RSA 479-A:9. The plaintiffs therefore argue that HPCA should not have assessed the equipment expenses on an equal basis, but rather should have charged the unit owners in proportion to their percentages of undivided interests in the respective clusters.

It is clear that any personal property owned or leased by each individual condominium cluster for the purposes of property maintenance would have been subject to the various provisions of RSA chapter 479-A. Proportional payment for and ownership of such "common area" property would therefore have been mandatory under the statute. But the plaintiffs fail to observe the fundamental difference between such a scenario and their own. HPCA was set up and is operated as a non-profit corporation. As a corporate entity, it is subject to the provisions of RSA chapter 292, not RSA chapter 479-A.

The fact that all condominium owners in the six separate condominium clusters must become members in HPCA does not

mean that HPCA is a condominium project subject to the provisions of RSA 479-A, rather than a separate corporation. Certainly, the unit owners in each cluster might have decided to maintain each cluster's grounds individually. Had they purchased maintenance equipment to that end, it would have been subject to the proportional ownership strictures of RSA chapter 479-A.

■ In this case, however, cluster three, in its declaration and by-laws, legally delegated its managerial and maintenance duties to HPCA. The delegation of these duties was reaffirmed in subsequent amendments signed by owners holding seventy-five percent of the voting power of the cluster. HPCA's role in maintaining the "common area" was thereby akin to that of an independent contractor, and the unit owners had no rights in the HPCA equipment by virtue of their ownership interests in the clusters. Their relationship to HPCA and their rights in its property were governed by their membership in HPCA individually. Correspondingly, while the routine maintenance fees charged to a cluster by HPCA are "common expenses" which must be allocated proportionally against the unit owners, *see Pepe v. Whispering Sands Condominium Ass'n*, 351 So. 2d 755, 757 (Fla. Dist. Ct. App. 1977), we hold that the purchase of equipment *by HPCA was an expense of HPCA* and not a *"common expense" of the clusters.* Because we find that the purchase of the equipment was not a "common expense," we conclude that HPCA was not required to allocate the cost of the equipment on a proportionate basis.

The plaintiffs also assert that HPCA had no authority to purchase the maintenance equipment solely for the account of HPCA and that this action constituted a breach of its fiduciary duty to the unit owners. We disagree. The declaration and articles of association of HPCA provide the corporation with a broad range of authority. The declaration specifically empowers HPCA to "purchase . . . any property or other facilities in the course of its administration . . . of the Community Property" and "to perform services . . . for one or more of the Hilltop Cluster Associations. . . ." The articles of association state that HPCA has the authority "[t]o do any other thing . . . to promote the common benefits and enjoyments of the members."

■ We hold that the purchase of maintenance equipment by HPCA promoted the general welfare of its members and was consistent with its established powers. *Cf. Peoples Laundry Co. v. Dubeau*, 80 N.H. 544, 546, 119 A. 706, 707 (1923). *See generally Herbert v. Sullivan*, 37 F. Supp. 468, 469 (D.N.H.), *aff'd*, 123 F.2d 477, 478 (1941), *cert. denied*, 315 U.S. 803 (1942).

In addition to challenging the purchase of the grounds maintenance equipment, the plaintiffs contest HPCA's method of raising surplus working capital. The plaintiffs argue that HPCA's use of surplus working capital, raised through equal assessments against its members, for maintenance of the cluster "common areas" was improper because the cluster declarations require "common area" maintenance expenses to be assessed in accordance with the unit owners' percentages of undivided interest.

This argument overlooks the fact that the cluster associations reimbursed HPCA for all funds which it expended for "common area" maintenance and that the money for these reimbursements was assessed against the unit owners on a proportional basis. Thus, while the unit owners contributed equally to surplus working capital, they ultimately paid for "common area" maintenance expenses on a proportional basis. The use of the surplus working capital fund was merely a way of meeting HPCA's fluctuating cash flow needs while simplifying its bookkeeping and budgetary administration. The use of surplus working capital promoted the general welfare of the unit owners and therefore properly fell within HPCA's recognized powers. *But cf. Hidden Harbour Estates v. Basso,* 393 So. 2d 637, 640 (Fla. Dist. Ct. App. 1981).

Having rejected the plaintiffs' arguments, we further hold the appeal not to be frivolous and remand for entry of decree.

*Remanded.*

All concurred.