NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0143


KELLY SANBORN, TRUSTEE OF THE 428 LAFAYETTE, LLC REALTY TRUST & a.

v.

428 LAFAYETTE, LLC & a.

ANDREW COTRUPI

v.

428 LAFAYETTE, LLC & a.

Argued: November 10, 2015
Opinion Issued: February 18, 2016


Keane & Macdonald, P.C., of Portsmouth (Douglas W. Macdonald on the brief and orally), for the plaintiffs.


Shaines & McEachern, PA, of Portsmouth (Paul McEachern and Jacob Marvelley on the brief, and Mr. McEachern orally), for the defendants.


Andrew Cotrupi, for himself, by brief and orally.

CONBOY, J. This appeal arises out of two consolidated actions brought by the plaintiffs, Kelly Sanborn, Trustee of the 428 Lafayette, LLC Realty Trust, Donald and Rosemarie Folk, Heather Hancock, and Andrew Cotrupi, against the defendants, 428 Lafayette, LLC and John Roberge, relating to their respective ownership of condominium units at Village Square of Hampton Condominium (Condominium). The defendants appeal rulings of the Superior Court (Anderson, J.) that: (1) Village Square of Hampton Condominium Association (Association) is governed by RSA chapter 292 (2010 & Supp. 2015), entitled "Voluntary Corporations and Associations" (hereinafter Voluntary Corporations Act), rather than RSA chapter 356-B (2009 & Supp. 2015), the "Condominium Act"; and (2) Cotrupi has the right to use certain commercial parking spaces at the Condominium. We affirm in part, vacate in part, and remand.

I.    Background

The trial court found, or the record supports, the following facts. The Condominium was created on August 11, 2006, pursuant to a declaration, which was recorded in the Rockingham County Registry of Deeds. The Condominium is a fourteen-unit building consisting of twelve residential units and two commercial units.

The declaration provides that fourteen of the parking spaces on the condominium property shall be commercial parking spaces shared by the owners of the two commercial condominium units. In 2007, Cotrupi purchased one of the commercial units. Cotrupi's warranty deed states that his unit "is conveyed with the benefit of and subject to the Declaration." The deed also conveyed to Cotrupi "the exclusive right to use" six of the commercial parking spaces.

The Condominium's bylaws were recorded on the same date as was the declaration. The bylaws vest "[t]he government of the condominium" in the Association and provide that "[a]ll [o]wners of [u]nits in the condominium shall constitute the Association." The bylaws state that: "Each Unit shall be entitled to one vote." They also state that they "are adopted pursuant to" and "are intended to comply with" the Condominium Act. The bylaws further provide that: "The Association may be incorporated as a New Hampshire voluntary corporation and these By-laws shall serve as the By-laws of said corporation." In February 2007, the Association incorporated as a nonprofit corporation pursuant to the Voluntary Corporations Act.

In 2010, Roberge, through 428 Lafayette, LLC, purchased seven of the condominium units — six residential units and the remaining commercial unit. Almost immediately after Roberge purchased his units, other unit owners began complaining that he was violating the Association's bylaws. Disputes

2

arose concerning his use of his commercial unit, as well as over parking and maintenance issues.

Roberge's mother also owns two of the residential condominium units. She has historically given her voting proxies to Roberge, with the result that he had nine of the fourteen votes at Association meetings. In 2011, Roberge began serving as the Association's president.

In August 2013, the plaintiffs, condominium unit owners, brought this action against the defendants, seeking, among other things, various forms of injunctive relief, including: (1) "the appointment of a custodian or receiver of the Association for the duration of [the] litigation"; (2) the removal of Roberge as the president of the Association; and (3) certain limitations on Roberge's voting rights. Cotrupi also individually filed an action against the defendants relating to, among other things, the use of commercial parking spaces at the Condominium. The trial court consolidated the actions.

On November 18, 2013, following an evidentiary hearing, the Trial Court (McHugh, J.) issued an order granting some of the plaintiffs' requested forms of relief. In its order, the court stated: "If the conditions do not improve then the plaintiffs have the right to petition for further relief from this Court and circumstances at that time might warrant a more severe Court response in terms of the management of the Condominium Association."

In August 2014, the plaintiffs sought further relief from the court, including a finding that "the Association, as a corporation, is to operate in accordance with corporate princip[les] whereby each Director is afforded one vote on issues before the Board of Directors." After a hearing, the trial court ruled that the Association "is governed as a nonprofit corporation [pursuant to the Voluntary Corporations Act], rather than a condominium [under the Condominium Act], for the relatively straightforward reason that it chose" to incorporate. The court ordered the unit owners to "elect five directors" and that "[e]ach member shall have one vote — not one vote per unit." The defendants moved for reconsideration, arguing that the court erred in ruling that the Association is governed by the Voluntary Corporations Act rather than the Condominium Act. The defendants also raised an issue, not addressed in the court's order, concerning Cotrupi's right to use eight of the Condominium's commercial parking spaces not subject to his exclusive use. The court denied the defendants' motion, and this appeal followed.

## II.     Governance of the Association

The defendants argue that the trial court erred in ruling that governance of the Association is exclusively controlled by the Voluntary Corporations Act rather than the Condominium Act. They contend that: (1) application of the Condominium Act is mandatory; (2) the Association's bylaws prohibit the

3

application of the Voluntary Corporations Act; and (3) application of the Voluntary Corporations Act, to the exclusion of the Condominium Act, will "result in the fundamental destabilization of countless condominiums." The plaintiffs counter that, as an incorporated entity, governance of the Association is exclusively controlled by the Voluntary Corporations Act and the Association's bylaws do not negate the Act's application.

Resolution of this issue requires us to engage in statutory interpretation. "The interpretation of a statute is a question of law, which we review de novo." Autofair 1477, L.P. v. American Honda Motor Co., 166 N.H. 599, 602 (2014) (quotation omitted). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. at 603 (quotation omitted). "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." In the Matter of Conant & Faller, 167 N.H. 577, 580 (2015). "Absent an ambiguity we will not look beyond the language of the statute to discern legislative intent." State v. Mayo, 167 N.H. 443, 450 (2015) (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). We interpret statutory provisions "in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted).

The Condominium Act applies "to all condominiums and to all condominium projects." RSA 356-B:2, I (2009). Under the Condominium Act, all condominiums must record "a set of bylaws providing for the self-government of the condominium by an association of all the unit owners." RSA 356-B:35, I (2009). It further provides: "The unit owners' association may be incorporated." Id. The Voluntary Corporations Act governs voluntary corporations and associations, see RSA 292:1 (2010), :4 (2010), and provides that "[t]he bylaws [of a voluntary corporation] may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with the laws of the state or the articles of agreement," RSA 292:6 (2010).

Neither the Condominium Act nor the Voluntary Corporations Act, however, contains language making it the exclusive Act governing condominium associations that incorporate. Because neither Act contains exclusivity language, we conclude that condominium associations that voluntarily incorporate, as in the present case, are subject to both Acts, including on matters of governance. Although not addressing the precise issue presented in this case, we note that other jurisdictions have utilized both the state's nonprofit corporation act and condominium act in addressing issues that arise with condominium associations incorporated as nonprofit corporations. Cf. Tuscany Grove Ass'n v. Peraino, No. 320685, 2015 WL 4249522, at * ___ (Mich. Ct. App. July 14, 2015) (per curiam) (concluding that

a bylaw provision of a condominium association incorporated as a nonprofit corporation, requiring approval of a supermajority of condominium owners before incurring legal expenses, was not void because, among other reasons, it did not conflict with Michigan's Nonprofit Corporation Act or Condominium Act); Carolina Marlin Club Marina v. Preddy, 767 S.E.2d 604, 613 (N.C. Ct. App. 2014) ("In order to determine whether [the] notice [of a meeting given by a condominium association created as a nonprofit corporation] was proper, [the court] look[ed] to both the Condominium Act and the North Carolina Nonprofit Corporation Act."); Shioleno v. Sandpiper Condominiums Council of Owners, Inc., No. 13-07-00312-CV, 2008 WL 2764530, at *3-7 (Tex. Ct. App. July 17, 2008) (determining that the condominium council, a nonprofit corporation that served as a condominium association, violated the Texas Non-Profit Corporation Act, the Texas Uniform Condominium Act, and its own bylaws when it failed to allow a condominium owner access to the association's books and records).

In ruling that the Association is solely governed by the Voluntary Corporations Act, the trial court relied upon Hobson v. Hilltop Place Community Assoc., 122 N.H. 1023 (1982). In Hobson, we held that Hilltop Place Community Association (HPCA), a nonprofit corporation, was governed by the Voluntary Corporations Act, not RSA chapter 479-A, the predecessor to the Condominium Act. Hobson, 122 N.H. at 1025-27; see Kilnwood on Kanasatka Condo. Unit Assoc. v. Smith, 163 N.H. 751, 753 (2012) (explaining that RSA chapter 479-A is the predecessor to the current Condominium Act). However, unlike in the present case, HPCA was not a condominium association that incorporated. Thus, Hobson is distinguishable. See Hobson, 122 N.H. at 1024-25.

The defendants contend that the Association's bylaws prohibit the application of the Voluntary Corporations Act to the Association. They argue that, because the bylaws state that they were "adopted pursuant to" and "intended to comply with" the Condominium Act and that they "shall serve as the By-laws" of the Association if it incorporates, the Association is governed by the Condominium Act. Regardless of the provisions of the bylaws, however, the bylaws cannot negate the applicability of the Voluntary Corporations Act. Cf. 18 Am. Jur. 2d Corporations § 16 (2004) ("Where a corporation's articles of incorporation or bylaws conflict with a statute under which the corporation was established, the statute controls.").

The defendants also contend that the application of the Voluntary Corporations Act, to the exclusion of the Condominium Act, will "result in the fundamental destabilization" of condominium associations. Because we conclude that condominium associations that incorporate are subject to both Acts, we need not address this contention.

Accordingly, we conclude that the trial court erred in ruling that the Association is governed solely by the Voluntary Corporations Act. Because the court issued specific governance-related orders concerning the election of directors and voting allocation based upon its conclusion that only the Voluntary Corporations Act applied, we vacate those orders and remand the case to the trial court to consider the governance issues raised by the parties in light of our holding that condominium associations that incorporate are subject to both the Condominium Act and the Voluntary Corporations Act.

III.     Commercial Parking Spaces

The defendants next argue that the trial court erred in ruling that Cotrupi has the right to shared use of eight commercial parking spaces on the condominium property, in addition to his exclusive use of the remaining six commercial parking spaces. The defendants contend that, because Cotrupi's deed references an amended site plan that was never presented to the trial court or recorded with the registry of deeds, "it is impossible to determine whether the Declarant intended for Cotrupi's deed to convey the exclusive use of six parking spaces, in addition to the eight remaining commercial spaces." The defendants assert that "[w]ithout an amended site plan, it is impossible to determine the deed's intent from its four corners" and, thus, urge us to consider extrinsic evidence to determine its intent.

Resolving this issue requires us to interpret Cotrupi's deed. "The proper interpretation of a deed is a question of law for this court." Lynch v. Town of Pelham, 167 N.H. 14, 20 (2014) (quotation omitted). "We review the trial court's interpretation of a deed de novo." Id. "In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at the time." Id. (quotation omitted). "We base our judgment on this question of law upon the trial court's findings of fact." Id. "If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence." Id. "If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms." Id.

Cotrupi's deed states: "Said Unit is hereby conveyed together with the exclusive right to use those six (6) parking spaces designated as limited common area for said Unit as shown and noted on [the] plan . . . to be recorded." It further states: "Said Unit is conveyed with the benefit of and subject to the [Condominium's] Declaration." Thus, the deed clearly and unambiguously grants Cotrupi the exclusive right to six commercial parking spaces and all the benefits stated in the declaration.

The declaration provides: "The Commercial Unit owners shall have the right to park within the parking spaces designated as Limited Common Area for

6

the Commercial Office Units on the Condominium Site Plan." Fourteen commercial parking spaces, including the eight in dispute, are designated as limited common area on the site plan recorded with the declaration. The declaration defines "[l]imited [c]ommon [a]rea" as "a portion of the Common Area which has been reserved for the exclusive use of the specific Unit or Units to which the Limited Common Area is assigned." Thus, contrary to the defendants' contention, in addition to being granted by deed the exclusive right to six commercial parking spaces, Cotrupi retains the right under the declaration to shared use of the remaining commercial parking spaces.

Accordingly, we conclude that the trial court did not err when it ruled that Cotrupi has the right to use his exclusively owned commercial parking spaces and the right to shared use of the remaining commercial parking spaces on the condominium property.

<u>Affirmed in part; vacated in part; and remanded</u>.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.