NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2015-0514


NEW HAMPSHIRE HOUSING FINANCE AUTHORITY

v.

PINEWOOD ESTATES CONDOMINIUM ASSOCIATION

Argued: May 5, 2016
Opinion Issued: September 20, 2016


Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief and orally), for the petitioner.


Cronin, Bisson & Zalinsky, P.C., of Manchester (Mark E. Connelly, Daniel D. Muller, Jr. and Ashley B. Scott on the brief, and Mr. Muller orally), for the respondent.


Gallagher, Callahan & Gartrell, P.C., of Concord (W. John Funk and Robert J. Dietel on the brief), for Cooperative Credit Union Association, Inc.; Mortgage Bankers and Brokers Association of New Hampshire, Inc.; and New Hampshire Bankers Association, as amici curiae.

BASSETT, J. The petitioner, New Hampshire Housing Finance Authority (NHHFA), appeals a decision of the Superior Court (Nicolosi, J.) granting summary judgment in favor of the respondent, Pinewood Estates Condominium Association (Pinewood), and awarding attorney's fees to Pinewood. The trial court ruled that, pursuant to Pinewood's condominium declaration, NHHFA was responsible for paying condominium assessments that were accrued by the previous owner of a unit NHHFA purchased at a foreclosure sale, and that Pinewood was not obligated to provide common services to the unit until all assessments were paid. Because we conclude that the Condominium Act, RSA chapter 356-B (2009 & Supp. 2015), operates to bar Pinewood's claim for unpaid pre-foreclosure condominium assessments, we reverse and remand.

The summary judgment record supports the following facts. In 2005, Patricia Rugg purchased a unit in Pinewood's condominium complex in Manchester. Rugg granted a mortgage for the unit to a local bank, and the bank subsequently assigned the mortgage to NHHFA. Rugg died in May 2011. The assessments on Rugg's condominium went unpaid after her death.

In June 2012, Pinewood sent a letter to Rugg informing her that she owed $1,375 in past-due assessments and attorney's fees. In August, Pinewood notified Rugg's estate and NHHFA, as the first mortgagee, that the unit's common services would be terminated in thirty days unless all the past-due assessments were paid. See RSA 356-B:46, IX (2009). Neither NHHFA nor Rugg's estate paid the past-due assessments. Subsequently, Pinewood terminated the unit's common services, including water and sewer services.

Rugg's mortgage payments also went unpaid after her death. In January 2013, NHHFA filed a Petition for Foreclosure Decree of Sale and to Quiet Title in superior court. The court granted the petition, and, in August, NHHFA purchased the unit at the foreclosure sale. Shortly thereafter, Pinewood notified NHHFA that it owed $4,796.20, including $4,414.75 in assessments accrued prior to the foreclosure, as well as post-foreclosure assessments. NHHFA paid all of the post-foreclosure assessments, but refused to pay the pre-foreclosure assessments.

NHHFA then filed a petition for declaratory judgment in the superior court, arguing that: (1) it took title to the unit free and clear of encumbrances, including Pinewood's claim to the pre-foreclosure assessments; and (2) Pinewood had no authority to terminate common services to the unit because of unpaid assessments accrued prior to the foreclosure. The trial court granted summary judgment in favor of Pinewood on both issues. Relying upon Section 2.3 of the condominium declaration, which provides that "any Owner acquiring a Unit shall be liable . . . for any prior and outstanding assessments levied against the Unit," the trial court concluded that NHHFA was responsible for all past-due assessments. The trial court also concluded that, although NHHFA had paid all post-foreclosure assessments, under Section 6.1(c) of the

2

condominium declaration, Pinewood could "terminate services until all assessments are paid, which includes the unpaid pre-foreclosure assessments." Because Pinewood "successfully enforced the provisions of the Declaration," the trial court also awarded Pinewood its attorney's fees and costs pursuant to RSA 356-B:15, II (Supp. 2015). This appeal followed.

On appeal, NHHFA argues that the trial court erred when it concluded that NHHFA is liable for the pre-foreclosure assessments. NHHFA contends that, pursuant to the Condominium Act and the foreclosure statute, Pinewood's encumbrance on the unit arising out of unpaid pre-foreclosure assessments was extinguished by the foreclosure. See RSA 356-B:46 (Supp. 2015); RSA ch. 479 (2013 & Supp. 2015). NHHFA further contends that, because it paid all post-foreclosure assessments, Pinewood cannot lawfully withhold common services from the unit. Pinewood counters that the trial court correctly relied upon the provisions of the declaration to conclude that Pinewood's claim for the pre-foreclosure assessments was not affected by the foreclosure sale. Pinewood also argues that, because assessments are levied against units rather than against individual owners, Pinewood need not restore common services until all assessments — both pre- and post-foreclosure — are paid. Pinewood also filed a cross-appeal.

As a threshold matter, Pinewood argues that NHHFA lacks standing to appeal the trial court's decision regarding the termination of services. "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Libertarian Party of N.H. v. Sec'y of State, 158 N.H. 194, 195 (2008) (quotation omitted). Here, NHHFA has suffered a cognizable legal injury: it cannot maintain or use the unit it purchased in foreclosure because Pinewood has terminated basic services to the unit — including water and sewer services — and refuses to restore them until all past-due assessments are paid. Accordingly, we conclude that NHHFA has standing.

We next address whether, pursuant to RSA 356-B:46, I(a) and RSA 479:26 (2013), NHHFA is obligated to pay condominium assessments that accrued prior to the foreclosure. Resolving this issue requires us to engage in statutory interpretation, and, therefore, our review is de novo. Prof. Fire Fighters of N.H. v. N.H. Local Gov't Ctr., 163 N.H. 613, 614 (2012). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Sanborn v. 428 Lafayette, LLC, 168 N.H. 582, 585 (2016) (quotation omitted). "We interpret

statutory provisions in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted).

The Condominium Act "governs all condominiums and all condominium projects." Neumann v. Village of Winnipesaukee Timeshare Owners' Assoc., 147 N.H. 111, 112-13 (2001). It is the enabling statutory authority for the condominium form of property ownership in New Hampshire. Cf. Bennett, Condominium Homeownership in the United States: A Selected Annotated Bibliography of Legal Sources, 103 Law Libr. J. 249, 263 (2011) ("[C]ondominium ownership is based on statutory authority, not on common law concepts." (quotation omitted)). We recently reaffirmed the principle that the terms of a condominium declaration must be interpreted to be consistent with the Condominium Act, and, if the terms of a declaration conflict with the Act, the Act controls. See Sanborn, 168 N.H. at 586 (explaining that "[r]egardless of the provisions of the [condominium] bylaws . . . the bylaws cannot negate the applicability" of a controlling statute); cf. 18 Am. Jur. 2d Corporations § 16 (2004) ("Where a corporation's articles of incorporation or bylaws conflict with a statute under which the corporation was established, the statute controls.").

The Act enumerates the powers of condominium associations, which include the ability to impose and collect assessments from each unit. See RSA 356-B:45 (2009). Condominium associations rely upon these assessments to pay for the operation, maintenance, repair, renovation, and replacement of elements of the common areas of the condominium. See Boyack & Foster, Muddying the Waterfall: How Ambiguous Liability Statutes Distort Creditor Priority in Condominium Foreclosures, 67 Ark. L. Rev. 225, 240 (2014) (observing that without assessments, association will "decrease services, and/or allow the community's appearance and quality of living to decline"). The Act empowers associations to collect unpaid assessments, and establishes the priority of an association's claim for unpaid assessments. The Act also authorizes a condominium association to terminate common services to a unit if assessments go unpaid. RSA 356-B:46, IX provides:

> Notwithstanding any law, rule, or provision of the condominium declaration, bylaws, or rules to the contrary, the unit owners' association may authorize, pursuant to RSA 356-B, its board of directors to, after 30 days' prior written notice to the unit owner and unit owner's first mortgagee of nonpayment of common assessments, terminate the delinquent unit's common privileges and cease supplying a delinquent unit with any and all services normally supplied or paid for by the unit owners' association. Any terminated services and privileges shall be restored upon payment of all assessments.

4

The Act provides that a lien for condominium assessments is generally junior to a first mortgage:

> The unit owners' association shall have a lien on every condominium unit for unpaid assessments levied against that condominium unit in accordance with the provisions of this chapter and all lawful provisions of the condominium instruments, if perfected as hereinafter provided. The said lien, once perfected, shall be prior to all other liens and encumbrances except (1) real estate tax liens on that condominium unit, (2) liens and encumbrances recorded prior to the recordation of the declaration, and (3) sums unpaid on any first mortgages or first deeds of trust encumbering that condominium unit and securing institutional lenders.

RSA 356-B:46, I(a) (emphases added). A condominium association may, however, gain limited priority over a first mortgage for six months of unpaid assessments if the association follows the procedure provided in RSA 356-B:46, I(c). If that procedure is not followed, the association's lien for assessments will be junior to the first mortgage. See RSA 356-B:46, I(a). This provision encourages associations to promptly act upon unpaid assessments and protects first mortgagees by ensuring that no more than six months of unpaid assessments can receive priority. See Boyack, supra at 283 (observing that "modern statutes typically balance lender and association interests" by "creat[ing] a limited and capped super-priority-association lien for a certain amount of months' worth of unpaid assessments"). The Act limits associations to "one priority lien." See RSA 356-B:46, I(d). We note that Pinewood did not follow the procedure in RSA 356-B:46, I(c) to secure such a priority lien.

New Hampshire law provides for two types of foreclosure proceedings pursuant to "a power of sale." RSA 479:22-:25 (2013 & Supp. 2015). One allows mortgagees to foreclose without judicial oversight provided that the mortgagee complies with the statute. RSA 479:25 (Supp. 2015). The other involves petitioning the court for a judgment of foreclosure. See RSA 479:22-:24 (2013). Under both methods, upon recording of the deed and affidavit, title to the foreclosed premises "shall pass to the purchaser free and clear of all interests and encumbrances which do not have priority over such mortgage." RSA 479:26, III (2013); see Restatement (Third) of Property (Mortgages) § 7.1 cmt. a at 448-49 (1997) (explaining that both "a valid judicial foreclosure" and a "power of sale (nonjudicial) foreclosure" result in the extinguishing of junior interests). This is "a fundamental principle of mortgage law." Restatement (Third) of Property (Mortgages) supra at 448; see Boyack, supra at 286 (observing that "[s]urvivability of a junior lien is unheard of in foreclosure").

NHHFA argues that Pinewood's claim to the debt arising from unpaid pre-foreclosure assessments does not have priority over NHHFA's mortgage

interest, and, therefore, that NHHFA owns the unit "free and clear of all interests and encumbrances of the association." (Quotation omitted.) Pinewood counters that the priority rules in RSA 356-B:46, I(a) are not applicable here because this case involves a "Termination Resolution" under RSA 356-B:46, IX, not a statutory lien for unpaid assessments. Pinewood asserts that because the termination of services is "a distinct legal right under the Condominium Act and Declaration," it "is not an encumbrance or interest in land subject to the priority determinations" of RSA 356-B:46, I. We agree with NHHFA.

Pinewood's argument contradicts the plain language of the Condominium Act, and fails to give effect to the specific priority provisions set forth in RSA 356-B:46, I(a). Although Pinewood is correct that the dispute in this case stems from Pinewood's termination of common services because of unpaid assessments, rather than from a statutory lien for assessments, Pinewood ignores the effect of the termination of services resolution on NHHFA's ownership of the unit. RSA 356-B:46, I(a) explicitly provides that, under circumstances such as those here, a lien for assessments is junior to the first mortgage, and, RSA 479:26, III provides that a junior lien is extinguished by foreclosure. If a termination of services resolution were not subject to these priority rules, an association could maintain an encumbrance on the unit after foreclosure that — although not a statutory lien — would operate as a lien on the unit. See Black's Law Dictionary 1063 (10th ed. 2014) (defining "lien" as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied"). Pinewood appears to argue that, by terminating common services pursuant to RSA 356-B:46, IX rather than filing a lien for unpaid assessments, it can, in effect, create a superior lien of an indeterminate amount lasting for an indefinite time. This result is plainly not allowed by RSA 356-B:46.

Pinewood's construction directly contravenes the Act's explicit limitations on an association's claim for unpaid assessments. An association is limited to one priority lien for no more than six months of unpaid assessments. See RSA 356-B:46, I(c)-(d). Had the legislature intended to allow a termination of services resolution to act as a priority lien, it would have included language in the statute to that effect. See Sanborn, 168 N.H. at 585 ("We . . . will not consider what the legislature might have said or add language that the legislature did not see fit to include." (quotation omitted)). Additionally, the priority rules set forth in RSA 356-B:46, I(a) to I(d) of the Act would be meaningless if a condominium association could side-step the procedural requirements for obtaining priority over a first mortgage holder merely by terminating services under RSA 356-B:46, IX based upon unpaid assessments. Thus, we conclude that Pinewood's interest — whether a lien in name or in operation — is subject to the priority rules in RSA 356-B:46, I(a). Accordingly, because RSA 356-B:46, I(a) establishes that Pinewood's claim for the pre-foreclosure assessments is junior to NHHFA's mortgage, and, therefore, is

6

extinguished by the foreclosure, see RSA 479:26, III, we conclude that NHHFA takes title to the unit free and clear of Pinewood's claim for the pre-foreclosure assessments.

We next address whether, despite NHHFA's "free and clear" ownership of the unit, see RSA 479:26, III, Pinewood can refuse to restore services until the pre-foreclosure assessment debt is paid. RSA 356-B:46, IX provides that if an association terminates common services because a unit owner fails to pay condominium assessments, "[a]ny terminated services and privileges shall be restored upon payment of all assessments." NHHFA argues that, because the foreclosure extinguished Pinewood's claim against the unit for unpaid pre-foreclosure assessments, the phrase "all assessments," under these circumstances, refers to only post-foreclosure assessments. Thus, NHHFA asserts that, because it has paid all post-foreclosure assessments, Pinewood must restore common services immediately. Pinewood counters that it need not restore services to the unit until all past-due assessments, including those accrued pre-foreclosure, have been paid. We agree with NHHFA.

We note that, although the foreclosure extinguished Pinewood's claim against the post-foreclosure owner — NHHFA — for the pre-foreclosure assessments, Rugg's underlying debt to Pinewood survives. See Cadle Co. v. Dejadon, 153 N.H. 376, 379 (2006) (foreclosure extinguishes lien on property, but underlying debt obligation survives). As NHHFA correctly observes, the fact "[t]hat Ms. Rugg (or her estate) still owes Pinewood money . . . does not make [NH]HFA chargeable. . . . Merely knowing of the outstanding assessment does not create a duty to pay." An association can gain priority over a first mortgage holder only by following the procedure set forth in RSA 356-B:46, I(c). Even when this procedure is followed, the Act limits an association to one six-month priority lien. See RSA 356-B:46, I(c)-(d). If an association could withhold services from the unit post-foreclosure in order to force the post-foreclosure owner to ensure that the debt of the previous owner is paid, an association would have an ongoing encumbrance on the unit that exceeds that authorized by the Act. We therefore conclude that, because NHHFA, as the post-foreclosure owner, is not responsible for Rugg's debt, Pinewood cannot continue to withhold services from the unit based upon the pre-foreclosure debt.

Pinewood, nonetheless, argues that, pursuant to its declaration and the Condominium Act, "the debt for unpaid assessments is . . . one inuring to the condominium unit, not the unit owner," and, therefore, all past-due assessments must be paid in order to restore common privileges and services to the unit. We disagree. When the Declaration and the Condominium Act conflict, the Act controls. See Sanborn, 168 N.H. at 586-87. We have concluded that the Act does not allow an association to have an ongoing encumbrance on a unit after foreclosure. NHHFA cannot have a greater obligation to pay past-due condominium assessments under Pinewood's

declaration than is otherwise allowed by the Act. Accordingly, we conclude that the trial court erred when it ruled that Pinewood could withhold common services until NHHFA pays the previous owner's debt.

Our holding today advances the policies underlying the Condominium Act. To rule otherwise would create uncertainty for lenders that provide mortgage financing to condominium owners. The ability of a condominium owner to readily secure mortgage financing is crucial to the viability of the condominium form of ownership. See Bennett, supra at 262-63 (explaining how improving access to mortgages for condominiums "allow[s] those who [can] not afford a single-family dwelling to realize the American dream of homeownership"). Lenders make loans based upon their calculations of risk and return, and "[p]aramount in that calculation is the priority position of their lien." Boyack, supra at 291. Moreover, because mortgage lenders often sell the mortgages they originate, giving the claims of condominium associations for unpaid assessments priority over first mortgage holders would negatively impact the secondary mortgage market. Id. at 292-93. The Condominium Act reflects a careful balancing by the legislature of the interests of condominium associations and lenders to ensure that lenders will make secured loans to condominium purchasers. See id. at 243 (observing that "[a] state's lien-priority legislation typically reflects its approach to balancing [the] policies" of "allocating costs equitably for jointly used property" and "encouraging home-mortgage finance").

Pinewood's remaining arguments are either not sufficiently developed for our review, see State v. Blackmer, 149 N.H. 47, 49 (2003), or respond to arguments made by NHHFA that we need not address, see State v. Kardonsky, 169 N.H. ___, ___ (decided June 14, 2016). Finally, because the trial court awarded attorney's fees and costs pursuant to RSA 356-B:15, II, which allows for such an award only to a prevailing party, we reverse the award. See RSA 356-B:15, II.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.