NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0110

JANET BALISE & a.

v.

BRAD BALISE & a.

Argued: November 16, 2017
Opinion Issued: December 21, 2017

Soule, Leslie, Kidder, Sayward & Loughman, PLLC, of Salem (David W. Sayward on the brief and orally), for the plaintiffs.

Forman, Clark, Pockell & Associates, P.A., of Londonderry (Steven A. Clark on the brief and orally), for defendants Brad Balise, Jon Carpenter, and Winifred Carpenter.

DALIANIS, C.J. Defendants Brad Balise (Brad), Jon Carpenter, and his mother, Winifred Carpenter, appeal the entry of judgment by the Trial Court (Anderson, J.) in favor of the plaintiffs, Janet and Stanley Balise, on the plaintiffs' petition to quiet title and for a declaratory judgment that they have a right to use a discontinued portion of a road to access their property and install utilities to service it. We affirm.

The relevant facts follow. The parties own property in Windham. The plaintiffs own tax lot 21-G-600 (Lot 600), Brad (the plaintiffs' son) owns tax lot 21-G-700 (Lot 700), and Winifred owns tax lot 24-G-100 (Lot 100). The plaintiffs formerly owned Lot 700. They sold it to Brad in 1999.

Lots 100 and 700 are adjacent to one another and have frontage on Range Road, a public way. Lot 600 abuts Lot 700 and has no frontage on Range Road or on any other public way. The disputed road, which was discontinued in 1962, runs perpendicular to Range Road. The disputed road lies between Lots 700 and 100. Lot 600 abuts it.

In the 1970's, a wooden barrier was placed across the disputed road. Since 1998, Brad has posted "No Trespassing" signs on the road. He has also parked vehicles and placed logs or boulders on it.

The plaintiffs seek to construct a residential dwelling on Lot 600, using the disputed road to access their property and provide utilities to it. In 2015, they brought the instant lawsuit against the defendants. The plaintiffs sought a declaration that, pursuant to RSA 231:43 (Supp. 2016), they have a right to use the disputed road to access their lot, which has not been "extinguished by adverse possession or other actions of the Defendants," and a declaration that their statutory right of access includes a right to install utilities in the disputed road. Thereafter, the plaintiffs moved for summary judgment as to both their claim of a right to use the disputed road for access to their lot and their claim of a right to install utilities in the disputed road. The defendants moved for summary judgment only as to the plaintiffs' claim of a right to install utilities.

The trial court granted the plaintiffs' first requested declaratory judgment, ruling that they "have a statutory right of access" over the disputed road under RSA 231:43, III, "which the Defendants have not extinguished by adverse possession." However, the trial court denied the parties' cross-motions for summary judgment as to the plaintiffs' second requested declaratory judgment, deciding that whether the plaintiffs "are able to run utilities . . . is subject to the rule of reason, which is a question for the trier of fact." Subsequently, the court held a two-day bench trial, and after reviewing the evidence, which included a view of the disputed road and surrounding property, determined that it was reasonable for the plaintiffs to install a single utility pole on the disputed road and to install utilities underneath the road. This appeal followed.

On appeal, the defendants contest the trial court's summary judgment rulings. They argue that, in granting partial summary judgment to the plaintiffs, the trial court erred by: (1) finding that the plaintiffs have a statutory right to access their lot over the disputed road; (2) determining that, in their deed conveying Lot 700 to Brad, the plaintiffs did not release their right

to use the disputed road to access Lot 600; (3) granting summary judgment to the plaintiffs on the issue of adverse possession; and (4) determining that whether the plaintiffs "are able to run utilities . . . is subject to the rule of reason." We address each argument in turn.

In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. JMJ Properties, LLC v. Town of Auburn, 168 N.H. 127, 129 (2015). If our review of that evidence discloses no genuine issues of material fact, meaning facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Sabinson v. Trustees of Dartmouth College, 160 N.H. 452, 455 (2010). We review the trial court's application of the law to the facts de novo. Brown v. Concord Group Ins. Co., 163 N.H. 522, 524-25 (2012).

The defendants first argue that the trial court misconstrued RSA 231:43, III as granting the plaintiffs a right to access their lot over the disputed road. The defendants contend that RSA 231:43, III "was adopted to protect a landowner from being deprived of its only means of access," and that, because the plaintiffs have other means of access to their lot, the statute does not grant them a right of access over the disputed road. They argue that the plaintiffs' alleged other means of access raises a genuine issue of material fact as to whether the plaintiffs are entitled to a statutory right of access. For the purposes of addressing the defendants' argument, we assume without deciding that the plaintiffs have other means of access to their lot.

Because this issue requires us to determine whether the trial court correctly interpreted RSA 231:43, our standard of review is de novo. See Cady v. Town of Deerfield, 169 N.H. 575, 577 (2017). In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. Unless we find statutory language to be ambiguous, we will not examine legislative history. Id.

RSA 231:43 governs the discontinuance of class IV, V, and VI highways or portions thereof. See RSA 231:43, I. RSA 231:43, I, provides, in pertinent part, that "[a]ny class IV, V or VI highway, or any portion thereof, in a town may be discontinued by vote of a town." RSA 231:43, II requires a town's selectboard to notify "all owners of property abutting" a class IV, V, or VI highway before voting upon whether to discontinue the highway or a portion

3

thereof.  RSA 231:43, III provides that "[n]o owner of land shall, without the owner's written consent, be deprived of access over such highway, at such owner's own risk."

The relevant statutory language is substantially the same now as it was in 1962, when the disputed road was discontinued.  See Laws 1949, 13:1.  At that time, the relevant statute provided:  "Any class IV, V, or VI highway, or any portion thereof, in a town may be discontinued by vote of a town; . . . provided . . . that no owner of land shall, without his written consent, be deprived of access over such highway, at his own risk."  Id.

The right conferred by RSA 231:43, III is a right of access over a discontinued class IV, V, or VI highway.  Under the plain language of the statute, that statutory right is not conditioned upon the discontinued highway being an abutting landowner's sole means of accessing his or her property.  Accordingly, we reject the defendants' assertion that, because the plaintiffs have other means of access, the statute does not grant them a right of access over the disputed road.

The defendants also allege that the plaintiffs have not used the discontinued road and argue that such nonuse raises an issue of material fact as to whether they remain entitled to their statutory right to use the disputed road to access their property.  For the purposes of addressing this argument, we assume without deciding that the plaintiffs have not used the disputed road.  However, based upon the plain language of the statute, the plaintiffs' use of the disputed road, or lack thereof, does not bear upon their statutory right under RSA 231:43, III.

The defendants next assert that the following language in the deed conveying Lot 700 demonstrates that the plaintiffs (the grantors) released to Brad (the grantee) their right to use the disputed road to access Lot 600:  "The within Grantors hereby release to said Grantee[ ] all rights of curtesy and homestead and other interest therein."  For the purposes of addressing the defendants' argument, we assume without deciding that the written consent to which RSA 231:43, III refers may be given to an entity other than the town.

We review the trial court's interpretation of a deed de novo.  Sanborn v. 428 Lafayette, LLC, 168 N.H. 582, 587 (2016).  "In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at the time."  Id. (quotation omitted).  "We base our judgment on this question of law upon the trial court's findings of fact."  Id. (quotation omitted).

Viewing the disputed language in context, we conclude that the word "therein" refers to the land conveyed by the deed — Lot 700 — and does not

include the disputed road. The land to which the deed refers is that "along" the disputed road. That description does not include the disputed road itself. Thus, we hold that the deed language upon which the defendants rely does not constitute the plaintiffs' written consent to release their statutory right to use the disputed road to access Lot 600.

The defendants next contend that the trial court erred when it determined that, according to the undisputed material facts, they did not extinguish the plaintiffs' statutory right of access through adverse possession. For the purposes of addressing this argument, we assume without deciding that a right of access conferred by RSA 231:43 may be extinguished by adverse possession.

"To acquire title to real property by adverse possession, the possessor must show twenty years of adverse, continuous, exclusive and uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made." O'Hearne v. McClammer, 163 N.H. 430, 435 (2012) (quotation omitted). The adverse possessor must prove these elements by a balance of probabilities. Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 33 (2007).

The trial court found that the undisputed facts failed to establish adverse possession because: (1) the defendants admitted that they did not erect the wooden barrier that was placed across the disputed road for more than 20 years; (2) the defendants admitted that, although Brad placed vehicles, logs, and boulders within the boundaries of the disputed road, he did so for fewer than 20 years; (3) the earliest date on which the defendants posted "No Trespassing" signs was 1998; (4) although the plaintiffs may have posted "No Trespassing" signs before 1998, their doing so was not adverse to their own interests; and (5) Jon's maintenance since the 1970's of a "No Trespassing" sign, which had been posted by a third party, was insufficient, standing alone, to establish all of the elements of adverse possession.

As the appealing party, the defendants have the burden of demonstrating that the trial court committed reversible error when it ruled that the undisputed facts establish that they did not extinguish the plaintiffs' right of access through adverse possession. See Gallo v. Traina, 166 N.H. 737, 740 (2014). They have failed to meet that burden. See id.

The defendants next argue that the trial court erred when it concluded that the scope of the plaintiffs' right to access and use the disputed road is governed by the "rule of reason." The defendants assert that the trial court should not have relied upon the "rule of reason" because "[t]his case does not involve an express easement," but rather "simply [involves] a statutory right of access."

5

The defendants' attempt to distinguish a private right of access conferred by statute from an easement is not persuasive. A private right of access is an easement. See Black's Law Dictionary 622, 1522 (10th ed. 2014) (defining an easement as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose" and defining a private right-of-way by referring to the definition of an easement). Moreover, we have previously applied the rule of reason to determine the scope of an easement that arose "because the plaintiffs' land abutted a discontinued public highway." Cote v. Eldeen, 119 N.H. 491, 493-94 (1979).

The defendants contend that the court should have relied instead upon RSA 231:46 (2009), which provides:

> When any class IV, V or VI highway, or any portion thereof, has been discontinued, any existing sewer, drain, water pipe or other utility easements or any permits or licenses previously established pursuant to RSA 231:159-182 shall be presumed to be reserved and shall remain in effect as an encumbrance upon the underlying land for so long as they remain in active use, unless such easements, permits or licenses are expressly included in the vote to discontinue the highway, or are subsequently discontinued by vote of the city or town.

According to the defendants, "[t]he statute was adopted because without it there is no preservation of the encumbrance for utilities for the discontinuance of a town or state road prior to 1992." The defendants contend that, before 1992 (when the current version of the statute was enacted), when a highway was discontinued, it was presumed that any utility easements previously granted were also discontinued. They argue that, since the statute was enacted, the presumption now is that any utility easements previously granted are not discontinued unless they are "expressly included in the vote to discontinue the highway, or are subsequently discontinued by vote of the city or town." RSA 231:46; see RSA 230:58-a (2009) (providing that, upon discontinuance of a public highway, "any existing sewer, drain, water pipe or other utility easements or any permits or licenses previously established pursuant to RSA 231:159-182 shall be presumed to be reserved and shall remain in effect as an encumbrance upon the underlying land for so long as they remain in active use, unless such easements, permits or licenses are expressly included in the notice of discontinuance, or are subsequently discontinued by the commissioner of transportation"); RSA 231:159-:182 (2009 & Supp. 2016) (concerning permits and licenses issued by municipal or state authorities to install utilities in a public highway).

6

The defendants' reliance upon RSA 231:46 is misplaced. The utility easements to which the statute refers are those expressly granted by governmental entity. <u>See</u> RSA 231:46; Laws 1981, 87:1 (setting forth version of RSA 231:46 before it was amended in 1992). The statute does not refer to the right of a private landowner to install utilities in a discontinued road as an incident of the landowner's statutory right to use the road to access his or her property. <u>See</u> RSA 231:46; Laws 1981, 87:1.

We have reviewed the defendants' remaining arguments and conclude that they do not warrant further discussion. <u>See</u> <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993).

<u>Affirmed.</u>

HICKS, LYNN, BASSETT, and HANTZ MARCONI, JJ., concurred.